1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  GABRIEL O. OGUNDELE,                    )   NO. CV 06-06152-MAN
                                            )
12                    Plaintiff,            )
                                            )   MEMORANDUM OPINION
13            v.                            )
                                            )   AND ORDER
14  MICHAEL J. ASTRUE,                      )
    Commissioner of the                     )
15  Social Security Administration,         )
                                            )
16                    Defendant.            )
                                            )
17

18       Plaintiff filed a Complaint on September 29, 2006, seeking review

19  of the denial by the Social Security Commissioner ("Commissioner")[1] of

20  Plaintiff's claims for disability insurance benefits ("DIB") and

21  supplemental security income ("SSI").  On October 27, 2006, the parties

22  consented to proceed before the undersigned United States Magistrate

23  Judge, pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint

24  Stipulation on April 30, 2007, in which:   Plaintiff seeks an order

25

26       [1]    Michael J. Astrue became the Commissioner of the Social
    Security Administration on February 12, 2007.  Pursuant to Rule 25(d)(1)
27  of the Federal Rules of Civil Procedure, Michael Astrue should be
    substituted in place of Commissioner Joanne B. Barnhart as the Defendant
28  in this action.   No further action need be taken to continue this suit
    by reason of the last sentence of Section 205(g) of the Social Security
    Act, 42 U.S.C. § 405(g).

reversing the Commissioner's decision and remanding the case for further proceedings; and Defendant requests that the Commissioner's decision be affirmed.    The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for DIB and SSI on March 12, 2004. (Administrative Record ("A.R.") 21, 212.)  Plaintiff claims to have been disabled since March 12, 2002, due to diabetes, hypertension, memory loss, and mental disturbance.  (A.R. 21, 70, 83, 88, 203, 212.)  He has past relevant work experience as, *inter alia*, a security guard.  (A.R. 22, 89, 97- 104, 225.)

The Commissioner denied Plaintiff's claim initially and upon reconsideration.  On June 20, 2005, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Walter Fisher ("ALJ").  (A.R. 637-69.)  On December 27, 2005, the ALJ denied Plaintiff's claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 8-10, 21-26.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his December 27, 2005 written decision, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period at issue.  (A.R. 22.)  The ALJ determined that Plaintiff has severe impairments consisting of diabetes and hypertension, but that

2

1  Plaintiff does not have an impairment or combination of impairments
2  listed in, or medically equal to an impairment listed in Appendix 1,
3  Subpart P, Regulations No. 4.    (A.R. 23.)    The ALJ concluded that
4  Plaintiff did not have "any significantly limiting mental impairment."
5  (A.R. 23.)    Further, the ALJ found that inconsistencies in both
6  Plaintiff's work history and educational background, as well as
7  references in the record to his non-compliance with prescribed
8  medications and multiple arrests for DUI and assault on police officers,
9  undermined his credibility.    (A.R. 24.)

10
11      Based on a June 16, 2004 state agency assessment (A.R. 297-306),
12  which itself was based on a May 3, 2004 consultative examination and
13  opinion by Ursula Taylor, M.D. (A.R. 290), the ALJ determined that
14  Plaintiff:  could lift 25 pounds frequently and 50 pounds occasionally;
15  could sit, stand, and walk six hours in an eight-hour workday; was
16  unable to perform repetitive bending and stooping; was unable to work in
17  especially hazardous settings, such as work at unprotected heights or
18  near dangerous machinery; and was unable to work in environments with
19  vibrating tools.    (A.R. 24-25.)    Based on this physical residual
20  functional capacity finding, the ALJ found that Plaintiff was able to
21  return to his past relevant work as a security guard.    (A.R. 25-26.)
22  Accordingly, the ALJ concluded that the Plaintiff was not disabled
23  within the meaning of the Social Security Act during the time period at
24  issue.    (Id.)

25
26                          **STANDARD OF REVIEW**
27
28      This Court reviews the Commissioner's decision to determine

                                    3

1  whether it is free from legal error and supported by substantial
2  evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
3  Commissioner's decision must stand if it is supported by substantial
4  evidence and applies the appropriate legal standards.  Saelee v. Chater,
5  94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
6  mere scintilla but less than a preponderance -- it is such relevant
7  evidence that a reasonable mind might accept as adequate to support the
8  conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).
9
10     Although this Court cannot substitute its discretion for that of
11  the Commissioner, this Court nonetheless must review the record as a
12  whole, "weighing both the evidence that supports and the evidence that
13  detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y. of
14  Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also
15  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
16  responsible for determining credibility, resolving conflicts in medical
17  testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d
18  1035, 1039-40 (9th Cir. 1995).  This Court must uphold the
19  Commissioner's decision if it is supported by substantial evidence and
20  free from legal error, even when the record reasonably supports more
21  than one rational interpretation of the evidence.  Id. at 1041; see also
22  Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
23  1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).
24  ///
25  ///
26  ///
27  ///
28  ///

DISCUSSION

Plaintiff alleges that the ALJ failed to develop the record and evaluate his mental impairment properly.   (Joint Stipulation ("J.S.") 3.)

A.   **The ALJ Committed Error At Step Two, And Failed To Adequately Develop The Record, Regarding Plaintiff's Mental Impairment.**

Two well-established principles guide this Court's review of Plaintiff's claim.   First, the requirement, at Step Two of the sequential analysis for social security claims, that an impairment be severe is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).   "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citation omitted); *see also* 20 C.F.R. §§ 404.1521(a) and 416.921(a) ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.")   A claim may be denied at Step Two only if a finding that the relevant impairments are not medically severe is "*clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

Second, the Commissioner has an affirmative duty to develop the record, even when the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993).   "In cases of mental

5

1  impairments, this duty is especially important." DeLorme v. Sullivan,
2  924 F.2d 841, 849 (9th Cir. 1990); *see also* Tonapetyan v. Halter, 242
3  F.3d 1144, 1150 (9th Cir. 2001)(ALJ has a heightened duty to develop the
4  record where the claimant is mentally ill and therefore unable to
5  protect her own interests); Higbee v. Sullivan, 975 F.2d 558, 561-62
6  (9th Cir. 1992).  The ALJ's duty to develop the record extends from the
7  basic premise that Social Security hearings are not adversarial in
8  nature.  Orcutt v. Barnhart, 2005 WL 2387702, *3 (C.D. Cal. 2005); *see*
9  *also* Sims v. Apfel, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085 (2000)("It
10 is the ALJ's duty to investigate the facts and develop the arguments
11 both for and against granting benefits"); 20 C.F.R. §§ 404.944 and
12 416.1444 (at the Administrative Hearing, the ALJ "looks fully into the
13 issues").
14
15      Turning to the pertinent record here, on May 10, 2004, a consulting
16 psychiatrist, Nathan Lavid, M.D., performed a psychiatric evaluation of
17 Plaintiff.   (A.R. 292-96.)   In his report, Dr. Lavid noted that
18 Plaintiff reported he was receiving psychiatric treatment.  (A.R. 295.)
19 Dr. Lavid diagnosed Plaintiff with alcohol dependence and depression not
20 otherwise specified, but concluded that Plaintiff: is "without evidence
21 of cognitive deficits, perceptual disturbances or delusion disorders";
22 and "would have no limitations from a psychiatric standpoint" if he
23 stopped drinking.  (A.R. 294-95.)
24
25      On June 24, 2004, a state agency physician, Dr. Stone, prepared a
26 Psychiatric Review Technique form, a check-the-box document, which was
27 predicated on Dr. Lavid's May 10, 2004 consultative report.  (A.R. 307-
28 20; *see especially* A.R. 319.)   Dr. Stone noted that Plaintiff has a

6

medically determinable impairment of depression, but checked the box indicating that this impairment did not satisfy the criteria for "affective disorders" constituting "severe" mental impairments. (A.R. 310.)  Dr. Stone also checked the box indicating that Plaintiff has a substance addiction disorder. (A.R. 315.)  The state agency physician's "opinion" relevant to the ALJ's Step Two determination consisted simply of a box checked to indicate that Plaintiff's depression and substance addiction disorders did not constitute a severe mental impairment. (A.R. 307.)

Dr. Lavid's May 2004 consultative psychiatric examination and Dr. Stone's June 2004 state agency assessment were a part of the administrative record before the ALJ.  In addition, the record contained Plaintiff's records of mental health treatment at Augustus F. Hawkins Mental Health Center from May 13, 2004, through July 15, 2004 (the "Augustus Hawkins records").  (A.R. 395-412.)

The Augustus Hawkins records reflect that Plaintiff's mental health treatment at Augustus Hawkins began on May 14, 2004.  (A.R. 400-12.) Plaintiff's psychological history is described as including two suicide attempts involving overdosing in the year preceding the commencement of his treatment.  (A.R. 408.)  At the time Plaintiff began treatment, he complained of sleeplessness, depression, tearfulness, decreased appetite, weight loss, fatigue, psychomotor retardation, poor concentration, and decreased interest and pleasure in life in general. (Id.)  Additionally, Plaintiff reported hearing his dead son talking to him.  (A.R. 402.)  A mental status evaluation at that time revealed that Plaintiff made erratic eye contact and exhibited:  slurred speech;

1   impaired memory; below average fund of knowledge; dysphoria, tearful,

2   and anxious mood; constricted affect; assaultive ideas; numerous

3   behavioral disturbances; poor "Serial 7's"; impaired concentration; and

4   passive features.    (A.R. 411.)    The assessing Augustus Hawkins

5   psychologist found a Global Assessment of Functioning score ("GAF") of

6   50.[2]    (A.R. 412.)    Plaintiff was primarily diagnosed as having major

7   depressive disorder, recurrent, severe with psychotic features, with a

8   secondary diagnosis of alcohol dependence.    (Id.)

9

10      Subsequent visits to Augustus Hawkins for mental health treatment,

11  in June and July 2004, are also documented.    (A.R. 396-99.)    On July 14,

12  2004, the last treatment documentation of record, treatment notes reveal

13  complaints consistent with the initial diagnosis, including

14  sleeplessness, depressed tearful mood, poor appetite, weight loss,

15  hearing voices, and, notably, paranoidal/persecutory-type delusions.

16  (A.R. 396.)

17

18      In the course of his treatment at Agustus Hawkins, Plaintiff was

19  prescribed anti-depressant and anti-psychotic medications, including

20  Paxil, Trazadone, and Seroquel.    (A.R. 397-98, 400.)    Throughout his

21  treatment at Augustus Hawkins, Plaintiff complied with his prescribed

22

23      [2]    A GAF score of 50 indicates "serious symptoms (e.g. suicidal
    ideation, severe obsessive rituals, frequent shoplifting) or any serious
    impairment in social, occupational, or school functioning (e.g. no
24  friends, unable to keep a job)." Diagnostic and Statistical Manual of
    Mental Disorders Text Revision, 34 (4th ed. 2000) ("DSM-IV-TR");
25  see also Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001)(GAF rating of
    50 or below indicates the presence of serious symptoms among which may
26  include the inability to work).    This denotes a significant difference
    in functioning from that found by Dr. Lavid in his consultative
27  examination, at which Plaintiff was assessed a GAF of 65.    (A.R. 295.)
    A GAF score of 61-70 indicates only "some mild symptoms" and a general
28  ability to function well. DSM-IV-TR, 34.

1  medication dosage.  (A.R. 397-401.)

2

3      Neither Dr. Lavid nor Dr. Stone appear to have had before them, or

4  been aware of, any of the Augustus Hawkins records.  (A.R. 292-96, 307-

5  20.)

6

7      The hearing before the ALJ took place on June 20, 2005.  (A.R.

8  637.)  Plaintiff's attorney questioned Plaintiff about his mental health

9  problems and treatment.  (A.R. 651-56.)  Plaintiff testified that he was

10  then being treated for mental health problems, was depressed, and heard

11  voices that precluded sleep.  He also stated that he cannot tolerate

12  "too much noise" or crowds, and he would try to escape them.  (A.R. 651-

13  54, 656.)  Plaintiff's attorney noted for the record that the Augustus

14  Hawkins records documented Plaintiff's claim of hearing voices.  (A.R.

15  653.)  Additionally, Plaintiff testified that he quit drinking in March

16  2004, and had been attending AA meetings daily since that time.  (A.R.

17  651-52).  Plaintiff also stated that he was unable to work, because he

18  frequently visits the hospital for treatment.  (A.R. 655-56)

19

20      In his decision, the ALJ summarily dismissed the Augustus Hawkins

21  records on the ground that they showed "only fleeting mental health

22  treatment."  (A.R. 23.)  The ALJ also gave short shrift to Plaintiff's

23  claimed mental impairment, finding it was not "severe," at Step Two,

24  based on the following reasoning:

25

26      [I]n an assessment dated June 2004, a State Agency

27      psychiatrist opines that even in consideration of the

28      claimant's ongoing alcohol abuse, the medical evidence of

9

record does not document significant and persistently limiting
mental impairment (Exhibit B5F).

Also notable, the report of a May 2004 psychiatric
consultative examination relates the claimant's admission that
he drinks daily. However, a concurrent mental status
examination shows little objective evidence of impairment,
including adequate memory and concentration, as well as an
absence of hallucinations. And the examiner comments, "The
mental status examination today revealed the patient
demonstrating extremely poor judgment by drinking on a daily
basis when he understands that drinking can exacerbate his
emotional complaints. The patient was otherwise without
evidence of cognitive deficits, perceptual disturbances or
delusion disorders at this time." (Exhibit B3F/4)

(A.R. 23.)

The ALJ's outright dismissal of the Augustus Hawkins treating
records without considering their substance, and reliance principally on
Dr. Stone's state agency assessment, as well as on Dr. Lavid's earlier
consultative report, constitutes error for several reasons. First, the
ALJ's characterization of the Augustus Hawkins records as showing only
"fleeting" treatment is plainly inaccurate, particularly in light of
Plaintiff's testimony at the June 2005 hearing that he still was
undergoing mental health treatment. Such mischaracterization of the
record is improper. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th
Cir. 1984)(holding that it was error for an ALJ to ignore or misstate

1  competent evidence in the record in order to justify his conclusion).

2

3      Second, the ALJ's dismissal of the treating psychological records,

4  without any discussion of their substance, violated the cardinal rule

5  governing the Commissioner's consideration of treating physician

6  opinions -- namely, even if the opinion of a treating physician is

7  contradicted by other medical evidence of record, it may be rejected by

8  the ALJ only for "specific and legitimate" reasons, based on substantial

9  evidence in the record. See, e.g., Widmark v. Barnhart, 454 F.3d 1063,

10  1066-67 (9th Cir. 2006); Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

11  1995); Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989).  For the

12  reasons noted above, the ALJ's characterization of the Augustus Hawkins

13  records as showing only "fleeting" treatment was not legitimate, and

14  thus, it was not an appropriate basis for failing to consider and reject

15  the opinions of Plaintiff's treating psychologists at Augustus Hawkins.

16  The ALJ failed to state any specific reason for rejecting those treating

17  opinions and, instead, simply deferred to the May 2004 and June 2004

18  opinions of the consultative examiner and the state agency physician.

19  While a non-treating physician's opinion may constitute substantial

20  evidence if it is based on independent, clinical findings,[3] the ALJ

21  nonetheless was required to state specific and legitimate reasons for

22  _____

23      [3]  See, e.g., Tonapetyan, 242 F.3d at 1149; Magallanes, 881 F.2d
    at 752.

24
       The Court notes that Dr. Stone's state agency opinion appears
25  to have been based entirely on Dr. Lavid's consultative opinion, the
    only medical/psychiatric record identified by the state agency examiner.
26  (A.R. 319.)  Accordingly, the ALJ's indication that he relied on two
    medical opinions to support his Step Two finding that Plaintiff's
27  claimed mental impairment was not severe is misleading, as the only
    clinical findings supporting his conclusion were those made by Dr.
28  Lavid.

                                      11

1  rejecting the treating opinions set forth in the Augustus Hawkins
2  records and relying instead on the conflicting opinion of Dr. Lavid (as
3  incorporated into Dr. Stone's assessment).   Moreover, and critically,
4  neither Dr. Lavid nor Dr. Stone reviewed the Augustus Hawkins records.
5  Hence, neither the consulting nor the state agency physician opinion can
6  be said to rest on a complete picture of Plaintiff's mental health
7  status.

8

9       Third, the ALJ's conclusory rejection of Plaintiff's claimed mental
10  impairment was inconsistent with the above-described standards that
11  govern the Commissioner's review at Step Two.   The Augustus Hawkins
12  records establish that Plaintiff's mental impairment had more than a
13  minimal effect on his ability to work, if they are credited.   The ALJ
14  failed to consider them, however, and his rejection of the records
15  summarily was ineffective to establish that they should not be
16  considered.   Accordingly, substantial evidence does not support the
17  ALJ's Step Two conclusion that the Plaintiff's claimed mental impairment
18  was non-severe.

19

20       In addition, the ALJ's duty to develop the record was triggered
21  when Plaintiff testified that he currently was receiving mental health
22  treatment.  (A.R. 651.)  Although the record at the time of the decision
23  included Augustus Hawkins treatment notes from May 2004 through July
24  2004, that sworn testimony indicated that additional material, treatment
25  records existed and, therefore, should have been considered and
26  incorporated into the record.   While it is the Plaintiff's
27  responsibility to prove disability, "in Social Security cases the ALJ
28  has a special duty to fully and fairly develop the record and to assure

12

that the claimant's interests are considered." <u>Smolen</u>, 80 F.3d at 1288 (quoting <u>Brown</u>, 713 F.2d at 443). Consequently, the ALJ failed in his duty "to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts" by not procuring the additional, relevant treatment records, once he was made aware that the Plaintiff continued to receive mental health care. <u>Higbee</u>, 975 F.2d at 561.

Defendant argues that the ALJ fulfilled his duty by obtaining a psychiatric consultative examination, and that the consultant's independent clinical findings constituted substantial evidence supporting the ALJ's determination. (J.S. at 6-7.) However, as Plaintiff points out, there is a year-long evidentiary gap between Dr. Lavid's consultative examination and the administrative hearing. (J.S. at 5.) Moreover, Dr. Lavid's examination occurred prior to the Plaintiff's diagnosis and treatment at Augustus Hawkins. Given that Dr. Stone's state agency assessment rests only on Dr. Lavid's opinion, that state agency assessment suffered from these same flaws.

Further, the treatment records from August 2004, up to the time of the June 2005 hearing were material to the assessment of Plaintiff's mental condition, particularly if Plaintiff's condition had worsened during that period. When a claimant's condition is progressively deteriorating, the most recent medical records are the most probative. <u>Stone v. Heckler</u>, 761 F.2d 530, 532 (9th Cir. 1985)(holding that earlier medical evaluations do not constitute substantial evidence to reject a treating physician's opinion, when condition is degenerative); <u>Magallanes</u>, 881 F.2d at 754-55 ("[w]here a claimant's condition becomes progressively worse, medical reports from an early phase of the disease

13

1  are likely to be less probative than later reports"). It therefore is

2  critical that the record be developed and the evidentiary gap filled.

3

4       An ALJ can discharge his or her duty to develop the record "in

5  several ways, including: subpoenaing the claimant's physicians,

6  submitting questions to the claimant's physicians, continuing the

7  hearing, or keeping the record open after the hearing to allow

8  supplementation of the record." _Tonapetyan_, 242 F.3d at 1150; _see also_

9  _Smolen_, 80 F.3d at 1288. Defendant argues that the ALJ fulfilled his

10  duty by leaving the record open for supplementation after the hearing.

11  (J.S. at 8, _citing_ A.R. 669.) In fact, the transcript indicates that

12  the record was left open _only_ for the submission of medical records from

13  H. Claude Hudson to clarify a physical limitation, not to obtain further

14  records regarding Plaintiff's mental impairment. (A.R. 668-69.) From

15  the evidence of record, it is clear that the ALJ made no effort to

16  ascertain the extent of Plaintiff's mental impairment following the

17  hearing. As a result, the ALJ failed to fully and fairly develop the

18  record regarding Plaintiff's mental impairment.[4]

19

20  [4] Allegations of Plaintiff's alcohol abuse may be addressed
following the development of the record. However, the ALJ must first
21  conduct the five-step sequential evaluation "without separating out the
impact of alcoholism or drug addiction." _Bustamante v. Massanari_, 262
22  F.3d 949, 955 (9th Cir. 2001). If, following this inquiry, there is a
finding of disability, the ALJ must perform a two-step analysis to
23  determine whether the substance abuse is a contributing factor to the
disability. 20 C.F.R §§ 404.1535(a) and 416.935(a). _First_, the ALJ
24  must evaluate which of Plaintiff's current mental and physical
limitations would persist if he stopped using drugs or alcohol. 20
25  C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2). _Second_, the ALJ must
determine whether Plaintiff's remaining limitations would be considered
26  disabling. 20 C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2). An ALJ may
not conclude that substance abuse is a contributing factor material to
27  the determination of disability without distinguishing between the
substance abuse contributing to the disability and the disability
28  remaining if the claimant refrained from the drug and alcohol use.

1    For the foregoing reasons, the ALJ's rejection of Plaintiff's
2  claimed mental impairment at the Step Two level was error. Accordingly,
3  the ALJ's decision regarding Plaintiff's claimed mental impairment is
4  reversed.

5

6  **B.   Remand Is Required.**

7

8    Here, remand is appropriate to allow the ALJ the opportunity to
9  correct the above errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587,
10  593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians'
11  opinions, remand for further proceedings is appropriate if enhancement
12  of the record would be useful); Higbee, 975 F.2d at 561-62 (remanding
13  case in order to develop the record); McAllister v. Sullivan, 888 F.2d
14  599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the
15  record).

16

17                              **CONCLUSION**

18

19    Accordingly, for the reasons stated above, the denial of benefits
20  is REVERSED, and this case is REMANDED for further proceedings
21  consistent with this Memorandum Opinion and Order. Judgment shall be
22  entered reversing the decision of the Commissioner, and remanding the
23  matter for further administrative action consistent with this Memorandum
24  Opinion and Order.

25

26  _____

27  Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(reversing and
   remanding case to determine whether claimant's disability would have
28  continued if she stopped using drugs and alcohol).

1    IT IS FURTHER ORDERED that the Clerk of the Court shall serve
2  copies of this Memorandum Opinion and Order and the Judgment on counsel
3  for Plaintiff and for Defendant.

4

5    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7  DATED: May 21, 2008

8                                      /s/
                              MARGARET A. NAGLE
9                     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                 16